UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:13-cv-00127-JHM

GARY ERVIN AND LISA A. ERVIN,　　　　　　　　　　　　　　　　　　PLAINTIFFS
ROBERT ERVIN AND LAURA
KAVANAUGH ERVIN,
TIMOTHY ERVIN AND VICKI ERVIN

V.

UNITED STATES OF AMERICA　　　　　　　　　　　　　　　　　　　　DEFENDANT
BY AND THROUGH ITS AGENT,
THE COMMISSIONER OF THE
INTERNAL REVENUE

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' and Defendant's cross Motions for Summary Judgment [DNs 59, 60]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that both Plaintiffs' and Defendant's Motions for Summary Judgment are **DENIED**.

### I. BACKGROUND

This case has a long and convoluted history. It began in 1999 when brothers, Gary, Robert, and Timothy Ervin (hereinafter "Plaintiffs"), sold a cable television company they built in their hometown of Sturgis, Kentucky for around forty million dollars. Plaintiffs were then approached by numerous accounting and tax firms offering advice regarding the proper handling of this newly recognized capital gain. (Gary Ervin Dep. [DN 59-3] at pg. 25, 84:6–25; [1] pg. 26, 85:1–25; 26, 86:1–25.) Gary Ervin, the brother in charge of handling most business and financial decisions, began discussing tax advantaged investments with David DiMuzio at BDO

---

[1] In this citation, pg. 25 refers to the page number in the docketed document here, DN 59-3, but the number 84:6–25 refers to the internal page number of 84 (referencing page 84 of the Ervin deposition), and 6–25 references the line numbers contained on page 84. Unless otherwise noted, this format shall apply to all citations herein.

Seidman (hereinafter "BDO"), who offered to help Plaintiffs find a way to reduce or eliminate the taxes resulting from the sale of the company. (Def.'s Mem. Supp. Mot. Summ. J. [DN 59-1] at 3; Gary Ervin Dep. [DN 59-3] at pg. 27, 91:2–25.) With the help of BDO, Curtis Mallet (a tax law firm), and Sentinel Advisors (an investment banking firm), Plaintiffs entered into a series of transactions that form the basis of this action. (Gary Ervin Dep. [DN 59-3] at pg. 27, 95:9–25; pg. 27, 97:1-17.) Plaintiffs consulted their longtime advisors, Jesse Mountjoy (their tax attorney) and Martin McElroy (their tax accountant). (Gary Ervin Dep. [DN 59-3] at pg. 17, 50:10-18.) Though Mountjoy and McElroy were not responsible for structuring or implementing the transactions at issue, they advised Plaintiffs as to the legality and validity of the them. (Mountjoy Dep. [DN 59-3] at pg. 90, 21:4–23; McElroy Dep. [DN 59-3] at pg. 135, 43:13–25; pg. 135, 44:1–19.)

The precise nature of transactions are best described in Jade Trading, LLC ex rel. Ervin v. United States, 598 F.3d 1372, 1375–76 (Fed. Cir. 2010) [hereinafter Jade II], abrogated by United States v. Woods, 134 S. Ct. 557 (2013). Briefly, however, the transactions, referred to as spread transactions, involved each brother forming a limited liability corporation (LLC) which purchased and sold call options. Each LLC contributed the options it owned to a partnership formed by the LLC's that was named Jade. After two months, each LLC withdrew from the Jade partnership. On their individual tax returns for 1999, each brother claimed approximately fifteen million dollars in loss as a result the spread transactions and involvement in the Jade partnership. The tax loss resulted from each brother increasing the basis (outside basis) of his interest in the Jade partnership by the cost of the purchased call options and not decreasing this basis by the amount of the liability Jade assumed under the sold call options.

After an audit of the partnership return, the IRS issued a final partnership administrative adjustment ("FPAA") with respect to the 1999 tax year. The FPAA determined that the Jade partnership should be disregarded and it disallowed the deductions claimed for losses supposedly incurred from the contribution of the spread transactions to Jade. The losses claimed by Jade were disallowed and penalties were imposed.

After the IRS issued its final FPAA and imposed penalties on Jade, Jade filed a petition for readjustment of the partnership items in the Court of Federal Claims. Jade Trading, LLC v. United States, 80 Fed. Cl. 11, 43 (2007) [hereinafter Jade I], aff'd in part, vacated in part, rev'd in part sub nom. Jade II, 598 F.3d 1372. The Court of Federal Claims concluded that Jade had not met its burden of demonstrating that the contribution of the spread transactions objectively had economic substance and upheld the FPAA in disallowing the deductions claimed for losses. Jade I, 80 Fed. Cl. at 14. The court also upheld the valuation misstatement penalties which relied on the individual partner's outside bases. Id. at 60.[2]

On appeal, the Federal Circuit agreed that the spread transactions contributed to the Jade partnership lacked economic substance. However, at the urging of the Jade partnership, the Federal Circuit concluded that the trial court did not have jurisdiction to determine the applicability of the valuation misstatement penalty. The penalties were based on the partners' outside bases in the partnership. The Federal Circuit held that a partner's outside bases in the partnership was an affected item rather than a partnership item. Thus, it concluded that because 26 U.S.C. § 6226(f), only provides jurisdiction to the Court of Federal Claims to apply a penalty related to an adjustment of a partnership item, it had no jurisdiction to apply a penalty which was

---

[2] Under the Tax Equity and Fiscal Responsibility Act, 26 U.S.C. §§ 6221–6232 (1997), all "partnership items" are to be determined in a single partnership level proceeding, the results of which will apply to each individual partner's income tax return. Should a partner challenge any adjustment to his income tax return or raise any partner-level defenses, he may file a partner level refund suit.

related to the partner' outside bases. Jade II, 598 F.3d at 1376–80 (citing Petaluma FX Partners, LLC. v. Comm'r of Internal Revenue Serv., 591 F.3d 649 (D.C. Cir. 2010)). Therefore, the Federal Circuit remanded the action back to the Federal Court of Claims in order to determine whether any penalties could have been assessed without relying on the individual partners' outside bases. Id. at 1380.

On remand, the Federal Court of Claims concluded that no penalties could be assessed without relying on the individual partners' outside bases; and, since the Federal Circuit had concluded that the partners' outside bases were not partnership items that could be assessed for penalties in a partnership level proceeding, the court could not determine the applicability of any penalties. Jade Trading, LLC v. United States, 98 Fed. Cl. 453, 459–60 (2011) [hereinafter Jade III], aff'd sub nom. Jade Trading, LLC ex rel. Ervin v. United States, 451 F. App'x 954 (Fed. Cir. 2012) [hereinafter Jade IV]. Without issuing an opinion, the Federal Circuit affirmed the Jade III decision per curiam. Jade IV, 451 F. App'x at 955. Neither party sought further review of this decision.

Thereafter, the IRS issued two more protective assessments, and Plaintiffs filed this partner level suit in this Court, seeking a refund of taxes, penalties, and interest they have paid. (Pls.' Compl. [DN 1] ¶ 107.) Plaintiffs raise several claims related to the validity of the tax assessments and the applicability of the penalties, particularly raising the reasonable cause defense. However, Defendant asserts that all assessments were properly made and Plaintiffs are not entitled to a refund based on the reasonable cause defense. Both sides now seek summary judgment.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Here, the parties have both filed Motions for Summary Judgment based on the merits of the refund action. Plaintiffs argue that they are entitled to a refund of the tax and penalties paid because the assessments made by the IRS between 2004 and 2013 were invalid. Alternatively,

Plaintiffs argue that the penalties are improper because they were never determined to be applicable by a court with proper jurisdiction. Defendant's Motion requests that the Court determine the Plaintiffs are liable for the valuation misstatement penalties and that the Plaintiffs' reasonable cause defense fails as a matter of law.

**A. Plaintiffs' Liability for the Gross Valuation Misstatement Penalty**

Plaintiffs bring this suit pursuant to 26 U.S.C. § 6230(c), which authorizes a claim for a refund by a taxpayer "on the grounds that . . . the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." 26 U.S.C. § 6230(c)(1)(C). Plaintiffs argue that no court with proper jurisdiction has or can now determine that the gross valuation misstatement penalty applies and the IRS erroneously collected it in the first place; therefore, Plaintiffs are entitled to a refund of the penalty payments.

Plaintiffs' argument is made possible due to the United States Supreme Court's decision in <u>United States v. Woods</u>, 134 S. Ct. 557 (2013). After the Federal Circuit's decision in <u>Jade</u>, the Supreme Court reached the opposite conclusion and held that courts in partnership level proceedings do indeed have jurisdiction to determine the applicability of a penalty even if that means determining an affected item such as a partner's outside basis. <u>Id.</u> at 564–65. In fact, the Court stated that "[p]rohibiting courts in partnership-level proceedings from considering the applicability of penalties that require partner-level inquiries would be inconsistent with the nature of the 'applicability' determination that TEFRA[3] requires." <u>Id.</u> at 563–64. The Court further explained:

> Under TEFRA's two-stage structure, penalties for tax underpayment must be imposed at the partner level, because partnerships themselves pay no taxes. And imposing a penalty always requires some determinations that can be made only at the partner level. Even where a partnership's return contains significant errors, a partner may not have carried over those errors to his own return; or if he

---
[3] Tax Equity and Fiscal Responsibility Act, 26 U.S.C. §§ 6221–6232 (1997).

6

did, the errors may not have caused him to underpay his taxes by a large enough amount to trigger the penalty; or if they did, the partner may nonetheless have acted in good faith with reasonable cause, which is a bar to the imposition of many penalties, see § 6664(c)(1). None of those issues can be conclusively determined at the partnership level. Yet notwithstanding that every penalty must be imposed in partner-level proceedings after partner-level determinations, TEFRA provides that the applicability of some penalties must be determined at the partnership level. The applicability determination is therefore inherently provisional; it is always contingent upon determinations that the court in a partnership-level proceeding does not have jurisdiction to make. Barring partnership-level courts from considering the applicability of penalties that cannot be imposed without partner-level inquiries would render TEFRA's authorization to consider some penalties at the partnership level meaningless.

Id. at 564. The Court stressed that "the District Court was *obliged* to consider [the defendant's] arguments that the economic-substance determination was categorically incapable of triggering the penalty." Id. (emphasis added). And, the Court noted that trial courts overseeing the partnership-level proceeding had proper jurisdiction for determining the applicability of the penalty because "[d]eferring consideration of those arguments until partner-level proceedings would replicate the precise evil that TEFRA sets out to remedy: duplicative proceedings, potentially leading to inconsistent results, on a question that applies equally to all of the partners." Id. at 565.

Despite having advocated the opposite position in Jade I and Jade II, the Plaintiffs now assert that the Court of Federal Claims is "the only court with the power to make such an adjudication" regarding the applicability of the valuation misstatement penalty. (Pls.' Mot. Summ. J. [DN 60-1] at 30.) Plaintiffs assert that the penalties were never found applicable at the partnership level; that the partnership-level proceeding is closed and final; that no party sought review of the final decision; and thus, the penalties are "erroneous and illegal" and all penalty payments Plaintiffs have made must now be refunded. (Pls.' Mem. Supp. Mot. Summ. J. [DN 60-1] at 30.) However, even though the Federal Circuit decided that a penalty related to a

partnership item could not be decided in a partnership level proceeding if the penalty relied upon the partner's outside basis, it did determine conclusively that "that the Ervin LLCs' contributions of the spread transactions to Jade lacked economic substance." 598 F.3d at 1376. The economic substance doctrine "require[s] disregarding, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality." Id. (citing Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1352 (Fed. Cir. 2006)). The Federal Circuit determined that the partnership assets "claimed high-basis and low-value," as the artificially inflated basis of $15 million "generated a purported $14.9 million tax loss," but "this loss was 'purely fictional.'" Id. (citing Jade I, 80 Fed. Cl. at 45). Therefore, the Federal Circuit concluded that the Jade partnership transactions lacked economic substance and should be excluded for tax purposes. Id. at 1378. It is precisely this conclusion that triggers the penalty.

The Supreme Court held that where, as here, an asset's true adjusted basis is zero, "the resulting valuation misstatement is automatically deemed gross and subject to the 40-percent penalty." Woods, 134 S.C. at 566. In fact, a basis greater than zero in "a partnership that, for tax purposes, did not exist" was deemed by the Court to be a "legal impossibility." Id. at 565. This was because the Court found that "the economic substance determination and the basis misstatement are not 'independent' of one another" but instead are "inextricably intertwined." Id. at 567 (citing Bemont Invs., LLC v. United States, 679 F.3d 339, 347–348 (5th Cir. 2012)). Therefore, "[t]he economic substance determination alone is legally capable of triggering the penalty." Id. at 565. Because the partners in Woods overstated and misrepresented the outside basis of their sham partnership, the Court in Woods had "no difficulty concluding" that the gross valuation misstatement penalty applied. Id. at 568.

In all stages of the Jade litigation, the partnership transactions have been determined to lack economic substance. The Supreme Court determined that the penalty should automatically apply to a partnership that lacked economic substance due to an overstated basis. See Woods, 134 S. Ct. at 565 ("[t]he penalty's plain language makes it applicable" to taxpayers whose partnerships were found to lack economic substance). The Court rejects Plaintiffs' attempt to avoid the penalty by arguing that no court with jurisdiction has found the penalties to be applicable. The Federal Court of Claims, at the partnership level, had jurisdiction to make the finding that the partnership lacked economic substance and therefore, the penalty is applicable as a matter of law. For these reasons, the Court denies Plaintiffs' Motion for Summary Judgment on the grounds that the penalty assessments and payments were invalid.

### B. Improper Stacking of Tax Assessments

Plaintiffs also argue that Defendant's making of multiple assessments violated the tax code, rendering the assessments invalid and entitling Plaintiffs to a refund of any amounts collected pursuant to that invalid assessment. (Pls.' Mem. Supp. Mot. Summ. J. [DN 60-1] at 24.) If the IRS makes a valid assessment, that assessment enjoys "a legal presumption of correctness" in civil cases. United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002). To rebut this presumption, the taxpayer bears the burden of proving by a preponderance of the evidence that the IRS's determinations in the assessments are arbitrary or erroneous. United States v. Janis, 428 U.S. at 433, 440–41 (1976) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)) (when the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, a taxpayer will not be held liable for the tax); see Indmar Products, Co. v. Commissioner, 444 F.3d 771, 776 (6th Cir. 2006) (citing Ekman v. Commissioner, 184 F.3d 522, 524 (6th Cir. 1999)) (finding the taxpayer must show "the determination to be incorrect or

9

arbitrary" in order for the assessment to be invalid). "[P]roof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." Janis, 428 U.S. at 442. "A 'naked' assessment is, by definition, arbitrary and excessive because it is not based on substantive evidence," Estate of Weller v. United States, 58 F. Supp. 2d 734, 739 (S.D. Tex. 1998) (citing Janis, 428 U.S. at 442); and, therefore, it is not "subject to the usual rule with respect to the burden of proof in tax cases." Janis, 428 U.S. at 442; see Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991).

Plaintiffs here do not argue that the assessments were arbitrary, as they do not argue that they were made utterly without foundation, Janis, 428 U.S. at 442; rather, they argue that the assessments were erroneously made by Defendant. Plaintiffs assert that the assessments were erroneous because they were improperly stacked and because the Federal Circuit's decision not to apply the penalties for want of jurisdiction in Jade II (and again in Jade IV) invalidated the assessments. Because of this, Plaintiffs demand that the tax and penalty collected from that assessment be abated.

First, Plaintiffs insist that under the tax code, the assessments that the IRS made were illegal. But, the initial assessment was indeed proper under 26 U.S.C. § 6225(a)(1). Under this statute, "no assessment of a deficiency attributable to any partnership item may be made before . . . the close of the 150th day after the day on which a notice of a final partnership administrative adjustment [FPAA] was mailed to the tax matters partner . . . ." 26 U.S.C. § 6225(a)(1). Here, there is no dispute that the original assessment was timely. Plaintiffs take issue with the fact that the assessment included the outside basis of the partnership as a partnership item because the Federal Circuit determined that outside basis could only be determined on the partner level. Specifically, Plaintiffs claim that the first assessment of June 4, 2004 was declared invalid by the

Federal Circuit when the Federal Circuit determined that outside basis was a partner-level affected item rather than a partnership item and that the penalties were improperly imposed. Therefore, Plaintiffs insist that the treatment of the outside basis as a partnership item invalidated the assessment and requires Defendant to abate the collected penalty payments. However, appeals were taken and there was uncertainty in the law as to the status of this determination at the time the assessment was issued and when the Federal Circuit ultimately decided <u>Jade IV</u>.

The Federal Circuit entered its final decision on January 12, 2012, and the parties had 90 days to petition the Supreme Court for certiorari. Because neither party did so, the decision of the Federal Circuit became final on April 12, 2012. After the Federal Circuit finally determined the gross valuation misstatement penalties could not be determined at the partnership level in <u>Jade IV</u>, the IRS was concerned that the June 4, 2004 assessment may not have been valid with respect to the assessed penalties. Due to the uncertainty regarding the status of the penalties, the IRS made additional assessments regarding the tax owed and issued multiple assessments in order to preserve its position for the future. On April 9, 2013, the IRS mailed a notice of deficiency regarding affected items to Plaintiffs; and, on April 10, 2013, the IRS similarly issued a computational adjustment assessment regarding partnership items. Both assessments were made within the statutorily prescribed time period (one year after the final judgment in the partnership proceeding). 26 U.S.C. § 6229(d)(2). Once the assessments had been mailed, the IRS was unable to administer any further assessments for 90 days to allow Plaintiffs to petition the Tax Court for relief, and, if they did not, the IRS could not make any further assessments for another 60 days. 26 U.S.C. § 6503(a). Again, after waiting the statutorily prescribed amount of time (150 days), the IRS issued a notice of deficiency that contained both computational adjustments and penalty assessments for the affected items.

Plaintiffs argue that these later assessments are invalid because they were issued multiple times and, in each instance, sought the same tax and penalties. Plaintiffs insist that these later assessments violated 26 U.S.C. § 6211 and 26 U.S.C. § 6212 because notices of deficiency cannot be issued demanding the same taxes and penalties that had been previously assessed and paid. While this may be a general rule of common sense, "the IRS may be required to adopt inconsistent positions to protect the public fisc." Bouterie v. Commissioner, 36 F.3d 1361, 1374 (5th Cir. 1994). In many instances the IRS has taken mutually inconsistent positions in order to avoid a "whipsaw," or "a situation in which there is one pool of income and two potential taxpayers, and the income might escape taxation altogether if [Defendant] were unsuccessful in pursuing only one taxpayer." Fayeghi v. Commissioner, 211 F.3d 504, 508 (9th Cir. 2000); see Sherbo v. Commissioner, 255 F.3d 650, 655 (8th Cir. 2001); Centel Communications Co. v. Commissioner, 920 F.2d 1335, 1339 (7th Cir. 1990). By taking this approach, the IRS can ensure that the assessed tax will be paid. Fayeghi, 211 F.3d at 508; see In re Rowen, 298 B.R. 641, 648 n. 16 (Bankr. D. Alaska 2003) (describing a whipsaw as a "double assessment" made in circumstances in which the IRS cannot determine the entity or party liable for taxes). In fact, the Commissioner of the Internal Revenue Service has specifically prescribed and sanctioned such "protective assessments." I.R.S. Chief Couns. Notice 2009-011 (March 11, 2009), 2009 WL 2853841.

> If a partner has reported a loss (or reduced gain) on the partner's individual return as a result of having sold the TEFRA partnership interest or an asset distributed by the TEFRA partnership, the IRS should make certain protective assessments to ensure that the assessments are made before the period of limitations on assessment expires. Given the different types of affected items – those that can be directly assessed and those requiring determinations at the partner level – the IRS may not know with certainty how a court will classify the affected item. See, e.g., Countryside L.P. v. Commissioner, T.C. Memo. 2008-3, n. 4 (2008); Bedrosian v. Commissioner, T.C. Memo. 2007-376 (2007). The IRS generally has one year from the close of the period within which a petition may be

> filed with respect to an FPAA or, if a petition is filed, the date the decision of the court becomes final, to assess any deficiency resulting from the adjustments to the partnership items or to issue a notice of deficiency. If the IRS issues a notice of deficiency, the statute of limitations is tolled, but only if section 6230(a)(2) authorizes the notice of deficiency. See [26 U.S.C.] § 6503(a).

Id.; see I.R.S. Chief Couns. Notice 2009-027 (Aug. 21, 2009), 2009 WL 2853841 ("Partners may raise partner-level defenses to a penalty (those that are personal to the partner, or that are dependent on the partner's separate return) only through a refund action. . . . If the penalties relate to affected items, then protective duplicative assessment procedures may be required."); Jane C. Bergner, 14 Mertens Law of Federal Income Taxation § 50:144, Westlaw (last updated June 2016) ("The Service has issued guidance regarding protective assessment procedures in cases subject to [TEFRA] that should be applied in cases in which a partner has sold at a loss (or reduced gain) either the TEFRA partnership interest or an asset distributed by the TEFRA partnership."). Not only do the assessments enjoy the presumption of validity, but they also were specifically authorized by the Commissioner to be made in a protective capacity in situations similar to the one at hand. Therefore, it is clear that because these assessments have been routinely upheld by courts in order to avoid windfalls for taxpayers due to uncertainty the protective assessments issued here were valid and not erroneously issued.

Regardless, in order to succeed in a refund suit, a plaintiff must show that he actually did not owe the tax or penalty at issue, despite the validity of the assessments. Compton v. United States, 334 F.2d 212, 218 (4th Cir. 1964) ("Even assuming that the assessment was thereby rendered invalid, plaintiff could not recover without a further showing that she did not in fact owe all or some part of the amount collected."); Roybark v. United States, 218 F.2d 164, 166 (9th Cir. 1954) (finding "the taxpayer must show the tax was over-paid" and that this principle "appears to be settled law"); see Kilgore v. United States, No. CIV. A. 92-0064-B, 1993 WL

468630, at *2 (W.D. Va. Aug. 6, 1993), aff'd, 37 F.3d 1494 (4th Cir. 1994) ("[T]o prevail in an action for refund, the taxpayer must not only overcome [the] presumption [of correctness] but must assume and discharge the added burden of demonstrating . . . that he owes no tax at all."). Assessments are merely recordings of amounts that taxpayers owe the government, and are "essentially . . . bookkeeping notation[s]." Hibbs v. Winn, 542 U.S. 88, 100 (2004). "Whereas the IRS may enforce a taxpayer's tax obligations in various ways, its broadest enforcement powers, such as the use of liens and levies, are available only when an assessment is made." Principal Life Ins. Co. v. United States, 95 Fed. Cl. 786, 790 (2010) (citing 26 U.S.C. §§ 6331(a), 6322, 6502). The assessment simply "serves as the trigger for levy and collection efforts." Hibbs, 542 U.S. at 102. Therefore, assessments are needed in order to collect taxes and penalties, but they are not prerequisites to tax liability. Principal Life, 95 Fed. Cl. at 806. Tax liability flows from the participation in a tax shelter and the misstatement of basis that resulted in an underpayment, not from the assessment itself. The tax and penalty "obligation arises and persists whether *vel non* that tax is assessed." Id. at 791. Therefore, in order to be successful in a suit for refund, Plaintiffs must demonstrate that they are entitled to a refund regardless of the validity of the assessments. See id. ("To put it bluntly, [taxpayer] either owes the taxes in question or does not—the IRS's failure to assess them timely does not change that fact.") (internal citations omitted). Plaintiffs have failed to show that the taxes in question are not owed.

Plaintiffs additionally assert that Defendant was clearly trying to collect three times the amount that Plaintiffs actually owed through these three rounds of assessments. Plaintiffs paid the tax and penalties between 2009 and 2012. Defendant issued the second and third rounds of assessments in 2013. Defendant never sought to enforce these assessments through collection

mechanisms. In fact, Defendant offered to stipulate that Plaintiffs had paid the tax and penalties in full and to abate the remainder of the assessments, but the Plaintiffs refused to do so. Plaintiffs were aware that they were not liable for all three assessments and Plaintiffs suffered no prejudice or harm from the later-issued protective assessments. Therefore, Plaintiffs have not met their burden to show that all of the assessments were erroneous or that they do not owe the tax and penalties collected. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment.

**C. Defendant's Motion for Summary Judgment: No Reasonable Cause Defense**

In this refund action, Plaintiffs allege that they had reasonable cause to report the basis in the Jade partnership as they did and claim the losses because they relied in good faith upon the advice of competent tax advisors. 26 U.S.C. § 6694. In its Motion for Summary Judgment, the Defendant asks the Court to find that the Plaintiff's affirmative reasonable cause defense fails as a matter of law.

The reasonable cause defense is a "narrow exception" to liability for a tax-related penalty. Kerman v. Commissioner, 713 F.3d 849, 868 (6th Cir. 2013); see Stobie Creek Invs., LLC v. United States, 82 Fed.Cl. 636, 716–17 (2008), aff'd, 608 F.3d 1366 (Fed. Cir. 2010). In order to qualify for this defense, Plaintiffs bear the burden of proving that they acted with reasonable cause and good faith in claiming an overstated basis in the Jade partnership of more than ten million dollars. See 26 U.S.C. § 6664(c)(1); 26 C.F.R. 1.6664-4(a). "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." 26 C.F.R. § 1.664-4(b); see CNT Investors, LLC v. Commissioner, 144 T.C. 161, 222 (2015).

Plaintiffs allege reliance on their tax lawyer, Jesse Mountjoy, and their tax accountant, Martin McElroy.[4] Mountjoy is an experienced tax attorney who has worked for Plaintiffs since around 1988 or 1989. (Mountjoy Dep. [DN 59-3] at pg. 78, 9:6–17; pg. 81, 11:18.) McElroy is a licensed CPA and a partner at his accounting firm; he has worked with Plaintiffs since around 1985 or 1990. (McElroy Dep. [DN 59-3] at pg. 126, 6:8–20; pg. 127, 10:2–5.) Plaintiffs argue that Mountjoy and McElroy "were ideal advisors because they not only had every moral and financial incentive to protect their ongoing client with the best independent advice they could provide–they had earned [Plaintiffs'] trust." (Pls.' Resp. [DN 64] at 31.)

The receipt of professional advice, however, "does not necessarily demonstrate reasonable cause and good faith." 26 C.F.R. § 1.6664-4(b). Instead, "the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The [advisor] was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the [advisor], and (3) the taxpayer actually relied in good faith on the [advisor's] judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002) (citations omitted); see Machacek v. Commissioner, 111 T.C.M. (CCH) 1248 (T.C. 2016); CNT, 144 T.C. at 223.

The Defendant argues that both Mountjoy and McElroy were unfamiliar with these complicated transactions, that they did not perform the requisite due diligence, and that they unreasonably relied on the statements of the promoters to form the bases of their findings. Plaintiffs dispute these contentions and cite to evidence in the record and legal argument in

---

[4] Plaintiffs do not and cannot rely on BDO or Curtis Mallet as advisors because they were not independent and they actually promoted the transactions. New Phoenix Sunrise Corp. v. Commissioner, 408 F. App'x 908, 917 (6th Cir. 2010) (finding taxpayers cannot rely on advice from a law firm that "actively participated in the development, structuring, promotion, sale, and implementation" of the tax shelter); see Kerman, 713 F.3d at 870.

opposition to the Defendant's motion for summary judgment. Simply put, there are issues of fact related to Plaintiffs' good faith, reasonableness and reliance which preclude summary judgment.

Therefore, the Court denies Defendant's Motion for Summary Judgment.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that both Plaintiffs' and Defendant's Motions for Summary Judgment are **DENIED**.

*Joseph H. McKinley*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 2, 2016

cc: counsel of record